1
2
3
4
5
6
7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   TERRY SHELMIRE,                          No. CIV S-07-1758-JAM-CMK-P

12              Petitioner,

13        vs.                                 FINDINGS AND RECOMMENDATIONS

14   D.K. SISTO, et al.,

15              Respondents.

16   _____/

17          Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the 2006 denial of parole

19   decision.  Pending before the court are:  Petitioner's petition for writ of habeas corpus (Doc. 1),

20   Respondent's response to the petition (Doc. 7), Petitioner's traverse (Doc. 8), Petitioner's

21   supplemental brief (Doc. 10), and Respondent's supplemental brief (Doc. 11).[1]

22
23

24          [1]     The supplemental briefs were filed pursuant to the court's request that each party
     file a brief discussing the effect, if any, the original Ninth Circuit panel decision in Hayward v.
25   Marshall, 512 F.3d 536 (9th Cir. 2008), would have on this case.  The panel decision in Hayward
     was thereafter vacated, and the case was heard en banc.  Therefore, the relevant case, as
26   discussed below is the en banc opinion, 603 F.3d 546 (9th Cir. 2010).

## I. BACKGROUND

Petitioner is serving an indeterminate life sentence for a conviction of first-degree murder.  Petitioner appeared at a parole suitability hearing in June 2006, at which time he was represented by counsel.  In denying parole, the Board of Prison Terms ("Board") noted the following: (1) the facts of the commitment offense; (2) inadequate self-help programming; and (3) a less than supportive psychological evaluation.

As to the commitment offense, the Board stated:

> The offense was carried out in an especially cruel and callous manner. The offense was carried out in a dispassionate and calculated manner.  The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.  The motive for the crime was inexplicable and incredibly trivial in relation to the offense.  These conclusions are drawn from the statement of facts which were read into the record from the probation officer's report at Pages 2 and 3, and I will note that the inmate, after fighting with his wife and being told to leave, followed her three blocks from the apartment, leaving his child, a toddler, at home alone while he followed his wife and shot her in the middle of the street six times.

The Board next noted Petitioner's institutional programing, stating:

> The prisoner has, although you have programmed remarkably since the last Board hearing, this Panel does not believe that you have participated sufficiently in beneficial self-help at this time.

The Board then discussed Petitioner's psychological report as follows:

> Additionally, the psychological report, which is dated March 21st, 2006, authored by John T. Rouse - - Dr. John T. Rouse is not totally supportive of release in that at Page 4, Dr. Rouse states that  "indeed he is much more introspective than he appears to have been some five years ago."  This shows the Panel that there is still room for growth.  Dr. Rouse continues that in his opinion the inmate's risk of dangerousness in the wider community is much less than it was at the time of his life crime and is likely to be average for those inmates who have committed similar offenses and have been successfully paroled.  It needs to be lower.

Finally, the Board further addressed Petitioner's self-help programing, stating:

> Mr. Shelmire, the Panel believes that you have started along the path of rehabilitation and have made a very significant start, particularly in [the] last four years between the last Board of Parole hearing and now.  You have shown us that you are on the right path with the self-help you have completed.  Your work with the Tawheed project in particular is clearly

helping you work on achieving an understanding of what you've done and
what kind of person you want to become.  You appear to be grasping
empathy and compassion in a step toward insight and remorse.  We don't
think you're there yet, however.  The Panel makes the following findings.
The prisoner needs further therapy in order to face, discuss, understand
and cope with stress in a non-destructive manner.  Until additional
progress is made, the prisoner continues to be unpredictable and a threat to
others.  The prisoner's gains are recent, and he must demonstrate an ability
to maintain gains over an extended period of time.  Nevertheless, the
prisoner should be commended for having absolutely no discipline at all
while he has been in prison, completing an abundance of positive
programming and showing initiative in development of a relationship
workshop for inmates and exceptional work evaluations in PIA optical
law.  However, these positive aspects of his behavior do not outweigh the
factors of unsuitability at this time.

Petitioner challenged the decision with a petition for writ of habeas corpus filed in

the Merced County Superior Court.  In denying relief, the court stated:

[T]he Board, in reaching it's decision, specifically found the parolee
(petitioner) would pose an unreasonable risk of danger to society or a
threat to public safety if released from prison.  The Board also found that
the offense was carried out in an especially cruel and callous manner and
in a calculated manner that demonstrated an exceptionally callous
disregard for human suffering.

The Court also denied Petitioner's claims that his crime cannot be considered particularly

egregious in the context of a first degree murder.  The California Court of Appeals and California

Supreme Court both summarily denied relief.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively

applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct.

(Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA

does not, however, apply in all circumstances.  When it is clear that a state court has not reached

the merits of a petitioner's claim, because it was not raised in state court or because the court

denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal

habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir.

2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach

petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208

(9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on

perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the

evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing

petition de novo where state court had issued a ruling on the merits of a related claim, but not the

claim alleged by petitioner).  When the state court does not reach the merits of a claim,

"concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

       Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

not available for any claim decided on the merits in state court proceedings unless the state

court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is

"contrary to" or represents an "unreasonable application of" clearly established law.  Under both

standards, "clearly established law" means those holdings of the United States Supreme Court as

of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

(citing Williams, 529 U.S. at 412) .  "What matters are the holdings of the Supreme Court, not

the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en

banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas

relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742,

753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).

For federal law to be clearly established, the Supreme Court must provide a "categorical answer"

to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a

4

1   state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

2   contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

3   created by state conduct at trial because the Court had never applied the test to spectators'

4   conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

5   holdings.  See Carey, 549 U.S. at 74.

6          In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

7   majority of the Court), the United States Supreme Court explained these different standards.  A

8   state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

9   the Supreme Court on the same question of law, or if the state court decides the case differently

10  than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

11  court decision is also "contrary to" established law if it applies a rule which contradicts the

12  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

13  that Supreme Court precedent requires a contrary outcome because the state court applied the

14  wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

15  Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

16  id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

17  determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,

18  1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

19  case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

20  is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

21         State court decisions are reviewed under the far more deferential "unreasonable

22  application of" standard where it identifies the correct legal rule from Supreme Court cases, but

23  unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

24  510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

25  that federal habeas relief may be available under this standard where the state court either

26  unreasonably extends a legal principle to a new context where it should not apply, or

5

1     unreasonably refuses to extend that principle to a new context where it should apply.  <u>See</u>

2     <u>Williams</u>, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

3     decision is not an "unreasonable application of" controlling law simply because it is an erroneous

4     or incorrect application of federal law.  <u>See id.</u> at 410; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63,

5     75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found

6     even where the federal habeas court concludes that the state court decision is clearly erroneous.

7     <u>See Lockyer</u>, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

8     deference to state courts by conflating error (even clear error) with unreasonableness."  <u>Id.</u> at 75.

9     As with state court decisions which are "contrary to" established federal law, where a state court

10     decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

11     unavailable if the error was non-structural and harmless.  <u>See Benn</u>, 283 F.3d at 1052 n.6.

12                  **III.  DISCUSSION**

13          Petitioner argues that the Board's decision was not based on some evidence of his

14     dangerousness, but rather was arbitrary, and the decision extended his sentence beyond the

15     statutory maximum.  Specifically, he argues: (1) the commitment offense is not relevant, reliable

16     evidence that Petitioner is currently a danger to society; (2) the commitment offense was not

17     particularly egregious; and (3) the Board failed to properly consider favorable evidence

18     indicating low public safety threat.  Respondents argue: (1) petitioner does not have a federally

19     protected liberty interest in parole; (2) petitioner received all the process he was due because he

20     was provided notice of the hearing and an opportunity to be heard; and (3) even if the "some

21     evidence" standard applies, the factors cited by the state court meet this standard.  In addition,

22     they argue Petitioner's sentencing claims are state law matters and are without merit.

23          In <u>Hayward v. Marshall</u>, the Ninth Circuit sitting en banc held that there is no

24     federal stand-alone substantive due process right to parole.  <u>See</u> 603 F.3d 546, 555 (9th Cir.

25     2010) (en banc).  Any substantive due process interest in parole arises solely from state law

26     creating the right.  <u>See id.</u>  The Ninth Circuit overruled its prior decisions in <u>Biggs v. Terhune</u>,

334 F.3d 910, 915 (9th Cir. 2003), <u>Sass v. Bd. of Prison Terms</u>, 461 F.3d 1123 (9th Cir. 2006),

and <u>Irons v. Carey</u>, 505 F.3946, 851 (9th Cir. 2007), "[t]o the extent [they]. . . might be read to

imply that there is a federal constitutional right regardless of whether state law entitles the

prisoner to release . . . ."  <u>Hayward</u>, 603 F.3d at 555.

Turning to whether California's parole scheme creates any substantive due

process rights, the Ninth Circuit stated: "Although the due process clause does not, by itself,

entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law

may supply a predicate for that conclusion."  <u>Id.</u> at 561.  The court then discussed California law,

including the California Supreme Court's decisions in <u>In re Lawrence</u>, 44 Cal.4th 1181 (2008),

and <u>In re Shaputis</u>, 44 Cal.4th 1241 (2008), and noted that "as a matter of state law, 'some

evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in

California."  <u>Id.</u> at 562.  The court then provided the following instructions for resolving parole

claims in the context of AEDPA:

> Since the "some evidence" requirement applies without regard to
> whether the United States Constitution requires it, we in this case, and
> courts in this circuit facing the same issue in the future, need only decide
> whether the California judicial decision approving the . . . decision
> rejecting parole was an "unreasonable application" of the California "some
> evidence" requirement, or was "based on an unreasonable determination of
> the facts in light of the evidence."

<u>Id.</u>

The en banc court concluded that Hayward had properly been denied parole because the nature of

the commitment offense combined with an unfavorable psychological evaluation provided "some

evidence" under California law of future dangerousness.  <u>See id.</u>

Interpreting the en banc decision in <u>Hayward</u>, the Ninth Circuit in <u>Person v.</u>

<u>Muntz</u> stated:  "By holding that a federal habeas court may review the reasonableness of the state

court's application of the 'some evidence' rule, <u>Hayward</u>, necessarily held that compliance with

the state requirement is mandated by federal law, specifically the Due Process Clause."  606 F.3d

606, 609 (9th Cir. 2010) (per curiam).  The court observed that "[t]he principle that state law

1  gives rise to liberty interests that may be enforced as a matter of federal law is long-established."

2  Id.

3          As has been clearly stated by the Ninth Circuit, California law provides the

4  contours of the substantive due process right to parole at issue in this case.  Under California law,

5  one year prior to an inmate's minimum eligible parole release date, the Board will set a date for

6  an eligibility hearing.  See Cal. Penal Code § 3041(a).   A release date shall be set unless release

7  currently poses an unreasonable risk of danger to society.  See Cal. Penal Code § 3041(b).  The

8  paramount concern in determining parole suitability in California is public safety.  See In re

9  Dannenberg, 34 Cal.4th 1061 (2005).  This requires an assessment of the inmate's current

10  dangerousness.  See In re Lawrence, 44 Cal.4th at 1205.  Such an assessment requires more than

11  "rote recitation of the relevant factors with no reasoning establishing a rational nexus between

12  those factors and the necessary basis for the ultimate decision – the determination of current

13  dangerousness."  Id. at 1210.

14          California regulations set forth various circumstances which tend to show

15  suitability and others which tend to show unsuitability.  See Cal. Code Regs., tit 15 § 2402(c)-(d).

16  Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the

17  commitment offense, where the offense was committed in an especially heinous, atrocious, or

18  cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable

19  relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of

20  severe mental problems related to the offense; and (6) serious misconduct while in prison.

21  Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably

22  stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant

23  history of violent crimes; (5) realistic plans for release; and (6) participation in institutional

24  activities indicating an enhanced ability to function within the law upon release.  See Cal. Code

25  Regs., tit. 15 § 2402(d).  The regulations are designed to guide the Board's assessment regarding

26  whether the inmate poses an "unreasonable risk of danger to society if released from prison," and

1  thus whether he or she is suitable for parole.  In re Lawrence, 44 Cal.4th at 1202.  There must be

2  a rational nexus between the facts cited by the Board and the ultimate conclusion on

3  dangerousness.  See id. at 1227.

4         Regarding reliance on the facts of the commitment offense, the denial of parole

5  may be predicated on the commitment offense only where the Board can point to factors beyond

6  the minimum elements of the crime that demonstrate that, at the time of the suitability hearing,

7  the inmate will present an unreasonable risk of danger to society if released.  See In re

8  Dannenberg, 34 Cal.4th at 1071.  While the Board cannot require an inmate to admit guilt in

9  order to be found suitable for parole, see Cal. Penal Code § 5011(b); 15 Cal Code Regs., tit. 15,

10  § 2236, the Board must consider the inmate's past and present attitude toward the crime and any

11  lack of remorse or understanding of the nature and magnitude of the offense, see 15 Cal. Code

12  Regs., tit. 15, §§ 2402(b), 2402(d)(3).  "Lack of insight" is probative of unsuitability only to the

13  extent that it is both demonstrably shown by the record and rationally indicative of the inmate's

14  current dangerousness.  See In re Calderon, 184 Cal. App. 4th 670, 690 (2010).

15         In light of the precedents outlined above the court concludes that petitioner has a

16  protected liberty interest in parole arising from state law.  The court also concludes that the

17  contours of the substantive guarantee required to protect that liberty interest are defined by state

18  law and that under California law parole may not be denied unless there is "some evidence" of

19  the inmate's dangerousness at the time of the parole eligibility hearing.  Respondents' arguments

20  to the contrary are rejected.

21         Applying the "some evidence" standard to the facts of this case, the court finds

22  that the state court's decision was neither an unreasonable application of that test nor based on an

23  unreasonable determination of the facts.  In making this finding, the court notes that the Board

24  observed that Petitioner's institutional behavior had been good and that his parole plans were

25  good, even going so far as to commend him on his behavior.  Aside from the immutable factors

26  concerning the commitment offense, the Board largely relied on Petitioner's recent gains in self-

1  help programming, noting a majority of Petitioner's programming had been accomplished in the

2  last four years since the prior parole hearing.  The Board again commended him on his hard

3  work, but found the advancements had been too recent to demonstrate an ability to maintain over

4  an extended period of time.  In addition, the Board relied on the psychological report of Dr.

5  Rouse. While positive overall, as the Board found, the report only rated Petitioner's risk of

6  dangerousness in the community as average.  The Board found that risk assessment needs to be

7  lower prior to Petitioner being granted parole.  The court finds reliance on Petitioner's recent

8  programming and the marginally supportive psychological report proper.  Petitioner has not

9  offered any evidence or argument that the Board's finding that he only recently advanced in

10  programming was inaccurate.  There is a reasonable nexus between Petitioner's failure to take

11  advantage of rehabilitative programming prior to that, and a likelihood that petitioner will re-

12  offend if released on parole.  In addition, failure to obtain a fully favorable psychological report

13  finding Petitioner's risk assessment to be low, supports the Board's decision that Petitioner poses

14  an unreasonable risk of danger.

15       Petitioner also argues the Board's decision to deny him a parole date effectively

16  increased his sentence, a decision that requires the facts to be established by a jury and by proof

17  beyond a reasonable doubt.  He basis this argument on state parole matrix, and argues his

18  sentence falls withing the middle term which is 28 years.  Once his post-conviction credits are

19  applied, his term would be reduced to 21 years, the amount of time he has already served.

20       Plaintiff was sentenced to an indeterminate term of 25 years to life.  To the extent

21  he cites Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), and U.S. v. Booker, 543 U.S. 220,

22  235 (2005), as support for his sentencing argument, the undersigned finds those cases do not

23  support his argument.  Petitioner is not directly challenging his sentence or the jury findings.

24  Instead, he is challenging a parole determination decision.  He provides no authority for his

25  position that he has served beyond his maximum sentence of life imprisonment, nor that the

26  failure to set a parole date somehow extends his life sentence beyond the maximum.  Even the

state authority Petitioner cites, <u>In re Dannenberg</u>, fails to support his position.  <u>See</u> 104 P.3d 783,

791 (Cal. 2005) (noting that noncapital murderers remain subject to indeterminate sentences, and

such indeterminate sentences may serve up to life in prison).  Indeed, the California Supreme

Court, in applying the matrix Petitioner cites to, found that the first step is for the Board to

determine if the prisoner is suitable for a parole release date, and only if the Board finds a

prisoner so suitable does the matrix apply to determine a specific appropriate release date.  <u>See</u>

<u>id.</u>  Here, the Board determined Petitioner was not suitable for a parole release date at the time of

his hearing.  Therefore, there was no reason for the Board to continue to the next step and

determine a proper release date based on the matrix, and Petitioner's argument to the contrary is

unpersuasive.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's petition for

a writ of habeas corpus (Doc. 1) be denied and that all pending requests/motions be denied as

moot.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

after being served with these findings and recommendations, any party may file written

objections with the court.  Responses to objections shall be filed within 14 days after service of

objections.  Failure to file objections within the specified time may waive the right to appeal.

<u>See</u> <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


 DATED:  September 14, 2010


                                        CRAIG M. KELLISON
                                        UNITED STATES MAGISTRATE JUDGE